UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>Honeywell International, Inc.  )<br>  )<br>Defendant.  )<br>  ) | Civ. Action No. 5:17-cv-1344 (FJS/DEP) |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States through the undersigned counsel, acting at the request of the Regional Administrator of the United States Environmental Protection Agency ("EPA") for Region 2, files this complaint and alleges as follows:

NATURE OF THE ACTION

1. This is a civil action brought pursuant to Sections 107 and 113(g)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607 and 9613(g)(2). In this action, the United States seeks to recover costs incurred and to be incurred by the United States in response to releases or threatened releases of hazardous substances at or from the Onondaga Lake Superfund Site located in the City of Syracuse and in the Towns of Salina, Geddes, and Camillus, Onondaga County, New York ("Site").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action and over the parties under 28 U.S.C. §§1331 and 1345 and Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), because the releases or threatened releases of hazardous substances that gave rise to this claim occurred in this district, and because the Site is located in this district.

## DEFENDANT

4. Defendant Honeywell International, Inc. ("Honeywell") is a Delaware corporation with its principal place of business in New Jersey and is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

## STATUTORY BACKGROUND

5. CERCLA was enacted in 1980 to provide a comprehensive governmental mechanism for abating releases and threatened releases of hazardous substances and other pollutants and contaminants, and for funding the costs of such abatement and related enforcement activities, which are known as "response" actions, 42 U.S.C. §§ 9604(a), 9601(25).

6. Under Section 104(a)(1) of CERCLA, 42 U.S.C. § 9604(a)(1), as amended:

> Whenever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or a substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare, the President is authorized to act, consistent with the national contingency plan, to remove or arrange for the removal of, and provide for remedial action relating to such hazardous substance, pollutant, or contaminant at any time (including its removal from any contaminated natural resource), or take any other response

>measure consistent with the national contingency plan which the President deems necessary to protect the public health or welfare or the environment . . . .
>
>Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in pertinent part:
>
>Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this Section
>
>>(1)     the owner and operator of a vessel or a facility,
>>
>>(2)     any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
>
>>     *     *     *
>
>>shall be liable for
>
>>(A)     all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan;
>>
>>(B)     any other necessary costs of response incurred by any other person consistent with the national contingency plan

## SITE DESCRIPTION AND FACTUAL BACKGROUND

7.     The Site is located in the City of Syracuse and in the Towns of Salina, Geddes, and Camillus, Onondaga County, New York, and comprises Onondaga Lake, its tributaries, and the upland facilities that have contributed or are contributing contamination to Onondaga Lake.

8.     Onondaga Lake is approximately 4.5 miles long and averages 1 mile in width. Seven major tributaries flow into the Lake, including Geddes Brook and Ninemile Creek, Tributary 5A, the East Flume, and Harbor Brook. Water exits the Lake via an outlet at its northwest end and flows into the Seneca River. The Seneca River joins the Oneida River in Phoenix, New York, to form the Oswego River, a major tributary of Lake Ontario. The land

immediately adjacent to Onondaga Lake primarily consists of industrial properties and county parks.

9.  The Site was placed on the National Priorities List ("NPL") on December 16, 1994.  The NPL is a national list of hazardous waste sites posing the greatest threat to health, welfare, and the environment, and was established pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605.

10.  Because of the size of the Site and the nature of the contamination, EPA has to date divided the Site into 25 operable units ("OUs").  Eleven of these OUs have been designated "Subsites" by EPA and the New York State Department of Environmental Conservation ("NYSDEC").  The Subsites have contributed or are currently contributing to the contamination of Onondaga Lake.

11.  In undertaking response actions to address the release or threat of release of hazardous substances at the Site, the United States incurred response costs of at least $12,095,321.88, plus interest, through February 29, 2012.  The United States will continue to incur response costs in connection with the Site.

Honeywell Successor Liability

12.  The Solvay Process Company was founded in 1881 and is the predecessor of Honeywell.

13.  Allied Chemical & Dye Corporation was incorporated on or about December 17, 1920.  This corporation was created by the consolidation of the General Chemical Company, Barrett Company, National Aniline and Chemical Company, Solvay Process Company, and the Semet Solvay Company.

14. On or about April 28, 1958, Allied Chemical & Dye Corporation became Allied Chemical Corporation.

15. On or about April 27, 1981, Allied Chemical Corporation changed its name to Allied Corporation.

16. In or around September 1985, Allied Corporation merged with the Signal Companies to become Allied-Signal, Inc.

17. In 1993, Allied-Signal, Inc. changed its name to AlliedSignal Inc.

18. On or about December 1, 1999, a wholly-owned subsidiary of AlliedSignal Inc. merged with and into Honeywell Inc., making Honeywell Inc. a wholly-owned subsidiary of AlliedSignal Inc.

19. On or about December 1, 1999, AlliedSignal Inc. changed its name to Honeywell International, Inc.

20. Honeywell and its predecessor companies are hereafter referred to collectively as "Honeywell."

<u>Semet Residue Ponds Subsite</u>

21. From approximately 1884 through approximately 1986, Honeywell operated an industrial complex known as the "Main Plant" located next to Onondaga Lake, upgradient of the Lake's southwest shoreline.

22. From approximately 1915 through approximately 1970, Honeywell operated the Benzol Plant, which was part of the industrial complex that comprised the Main Plant.

23. Honeywell produced benzene, toluene, napthalene, xylene, and "motor benzol" at the Benzol Plant.

24. From approximately 1917 through approximately 1970, Honeywell owned and operated the Semet Residue Ponds, located near the Main Plant industrial complex. During this time period, Honeywell used the Semet Residue Ponds as a disposal area for waste streams generated from operations at the Benzol Plant.

25. Honeywell currently owns the property on which the Semet Residue Ponds are located.

26. Hazardous substances within the meaning of Section 101(14) of CERCLA, including benzene, toluene, ethylbenzene, and xylenes (collectively, "BTEX"), naphthalene, mercury, and phenol have been found in the Semet Residue Ponds.

27. Certain hazardous substances, including benzene, toluene, xylenes, naphthalene, and phenol, are leaching from the Semet Residue Ponds into ground water and being transported by ground water to Onondaga Lake and to Tributary 5A, which discharges into Onondaga Lake.

28. On March 28, 2002, EPA and NYSDEC jointly issued a Record of Decision ("ROD") for the Semet Residue Ponds Subsite selecting the cleanup remedy for the Semet Residue Ponds Subsite ("Semet ROD").

LCP Bridge Street Subsite and Geddes Brook/Ninemile Creek

29. From approximately 1953 to approximately 1979, Honeywell owned and operated a 20-acre chemical manufacturing plant on Bridge Street in the Village of Solvay and Town of Geddes in Onondaga County, New York ("LCP Bridge Street Subsite").

30. At the LCP Bridge Street Subsite, Honeywell produced chlor-alkali products, including caustic soda (sodium hydroxide) and liquid chlorine.

31. From approximately 1953 to approximately 1968, Honeywell manufactured the chlor-alkali products using the mercury cell electrolytic process.

32. The waste stream that resulted from this process included mercury, graphite, salt, caustic soda and filter aid.

33. From approximately 1968 to approximately 1979, Honeywell manufactured chlor-alkali products using the mercury cell electrolytic process and the diaphragm cell electrolytic process.

34. The waste stream that resulted from the diaphragm cell process contained asbestos, lead, salt and caustic soda.

35. From approximately 1953 until at least 1970, Honeywell discharged wastewater from the LCP Bridge Street Subsite to a man-made drainage channel known as the West Flume.

36. The West Flume discharges to Geddes Brook, which discharges to Ninemile Creek, which in turn discharges to Onondaga Lake.

37. Wastewater, surface water, ground water, soil and sediment that was discharged or migrated from the LCP Bridge Street Subsite to the West Flume contained hazardous substances within the meaning of Section 101(14) of CERCLA, including but not limited to mercury, asbestos and lead.

38. The wastewater containing hazardous substances, including but not limited to mercury, asbestos and lead, flowed from the West Flume to Geddes Brook, from Geddes Brook to Ninemile Creek, and from Ninemile Creek to Onondaga Lake.

39. Discharges of wastewater containing hazardous substances within the meaning of Section 101(14) of CERCLA, including but not limited to mercury, asbestos and lead, from Honeywell's manufacturing operations at the LCP Bridge Street Subsite resulted in the contamination of the area of the Site known as Geddes Brook/Ninemile Creek ("GBNMC").

40. Hazardous substances, including but not limited to mercury, asbestos and lead, have been detected in the channel sediments, surface water, floodplain soils and/or sediments of Geddes Brook and Ninemile Creek.

41. GBNMC has been designated an operable unit of the Lake Bottom Subsite by EPA and NYSDEC, and has been further broken down into two OUs.

42. GBNMC OU1 includes the channel sediments, surface water, and floodplain soils and sediments of Geddes Brook beginning at its confluence with the West Flume at the LCP Bridge Street Subsite to its confluence with Ninemile Creek, and the channel sediments, surface water, and floodplain soils and sediments of Ninemile Creek beginning just upstream of its confluence with Geddes Brook to just downstream of an I-690 overpass.

43. GBNMC OU2 includes the channel sediments, surface water, and floodplain soils and sediments of Ninemile Creek beginning just downstream of the I-690 overpass to Ninemile Creek's confluence with Onondaga Lake.

44. On September 29, 2000, EPA and NYSDEC jointly issued a ROD for the LCP Bridge Street Subsite.

45. On April 30, 2009, EPA and NYSDEC jointly issued a ROD for Geddes Brook/Ninemile Creek OU1.

46. On October 1, 2009, EPA and NYSDEC jointly issued a ROD for Geddes Brook/Ninemile Creek OU2.

<u>Willis Avenue Plant Subsite</u>

47. From approximately 1918 to approximately 1977, Honeywell owned and operated a manufacturing plant on Willis Avenue in Geddes, New York (hereinafter, "Willis Avenue Plant") at which it manufactured chlor-alkali products and chlorinated benezenes.

48. Honeywell continues to own the property on which the Willis Avenue Plant was located.

49. From approximately 1918 to approximately 1947, Honeywell manufactured chlor-alkali products at the Willis Avenue Plant using a diaphragm cell process.

50. From approximately 1947 to approximately 1977, Honeywell manufactured chlor-alkali products at the Willis Avenue Plant using a mercury cell process and a diaphragm cell process.

51. Waste generated from the manufacture of chlor-alkali products at the Willis Avenue Plant included the hazardous substances mercury, lead, caustic soda and asbestos.

52. Waste generated from the manufacture of chlorinated benzenes at the Willis Avenue Plant included the hazardous substances benzene, chlorobenzene, 1,2-dichlorobenzene, 1,3-dichlorobenzene, 1,4-dichlorobenzene, 1,2,4-trichlorobenzene, and hexachlorobenzene.

53. Until approximately 1970, Honeywell disposed of wastes from the manufacture of chlor-alkali products and chlorinated benzenes generated at the Willis Avenue Plant by discharging the wastes to Onondaga Lake via the East Flume.

54. After 1970, Honeywell disposed of wastes from the manufacture of chlor-alkali products and chlorinated benzenes generated at the Willis Avenue Plant by discharging the wastes to settling lagoons known as Solvay Wastebeds 12-15 and to Onondaga Lake via the East Flume.

55. Hazardous substances have been detected in soil and ground water on the property owned by Honeywell where the Willis Avenue Plant is located. These include, but are not limited to, mercury, benzene, chlorinated benzenes, polynuclear aromatic hydrocarbons

("PAHs"), polychlorinated byphenyls ("PCBs"), and polychlorinated dibenzo-p-dioxins and dibenzofurans ("PCDD/Fs").

56. EPA and NYSDEC designated the Willis Avenue Plant as a Subsite.

57. EPA has overseen certain response actions at the Willis Avenue Plant Subsite, including but not limited to certain investigative work and "interim remedial measures."

Lake Bottom Subsite

58. Honeywell's ownership of the Semet Residue Ponds, the Willis Avenue Plant, and its previous ownership and operation of the LCP Bridge Street Subsite resulted in the release or threatened release of hazardous substances including mercury, lead, asbestos, benzene, toluene, xylenes, naphthalene, phenol, PAHs, PCBs, and PCDD/Fs to Onondaga Lake, including the sediments that lie at the bottom of the Lake ("Lake Bottom").

59. EPA and NYSDEC designated the Lake Bottom as a Subsite.

60. On July 1, 2005, EPA and NYSDEC jointly issued a Record of Decision for the Lake Bottom Subsite ("Lake Bottom ROD").

## GENERAL ALLEGATIONS

61. The Site, which includes but is not limited to each of the Subsites referenced above, is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

62. Mercury, benzene, toluene, ethylbenzene, xylenes, naphthalene, acetone, phenol, asbestos, lead, chlorobenzene, 1,2-dichlorobenzene, 1,3-dichlorobenzene, 1,4-dichlorobenzen, 1,2,4-trichlorobenzene, hexachlorobenzene, PAHs, PCBs, and PCDD/Fs are "hazardous substances" within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

63. There have been releases or threatened releases of one or more hazardous substances into the environment at or from the Site, including but not limited to, at or from the

Semet Residue Ponds Subsite, the LCP Bridge Street Subsite, the Willis Avenue Plant Subsite, the Geddes Brook/Ninemile Creek Subsite, and the Lake Bottom Subsite, within the meaning of Sections 101(14), 101(22) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(14), 9601(22) and 9607(a).

64. As a result of the releases or threatened releases of one or more hazardous substances at or from the Site, EPA has incurred and will continue to incur response costs, within the meaning of Sections 101(25) and 107 of CERCLA, 42 U.S.C. §§ 9601(25) and 9607.

65. The response costs incurred by EPA in connection with the Site were incurred in a manner not inconsistent with the National Contingency Plan, promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, and codified at 40 C.F.R. Part 300.

66. To date, the United States has incurred at least $12,095,321.88 in response costs in connection with the Site. The United States has been reimbursed for approximately $124,737 of these response costs. The United States will continue to incur response costs as a result of the release or threatened release of hazardous substances at the Site.

## CLAIM FOR RELIEF

67. Paragraphs 1-66, above, are realleged and incorporated herein by reference.

68. Defendant Honeywell is a person, or successor-in-interest to a person, who at the time of disposal of a hazardous substance owned and/or operated facilities from which there was a release or threatened release of one or more hazardous substances, which has caused and continues to cause EPA to incur response costs.

69. Defendant Honeywell is also the current owner of a facility from which there is a release or threatened release of a hazardous substance, which has caused and continues to cause EPA to incur response costs.

70. Pursuant to Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1), Defendant Honeywell is liable to the United States for all costs incurred and to be incurred by the United States in connection with the Site, including enforcement costs and interest on all such costs.

71. Pursuant to Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2), Honeywell is liable to the United States for all costs incurred and to be incurred by the United States in connection with the Site, including enforcement costs and interest on all such costs.

72. Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), the United States is entitled to a declaratory judgment that Defendant Honeywell is liable to the United States, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for future response costs to be incurred by the United States with respect to the Site and not inconsistent with the NCP.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

a. Enter judgment in favor of the United States, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), holding Defendant liable for unreimbursed response costs, including enforcement costs, incurred by the United States with respect to the Site, plus interest thereon;

b. Enter a declaratory judgment, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), regarding Defendant's liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages regarding the Site;

  c. Award the United States its costs of this action, including the costs of attorney time;

and

  d. Grant such other and further relief as the Court deems appropriate.

        Respectfully submitted,

        JEFFREY H. WOOD
        Acting Assistant Attorney General
        Environment and Natural Resources Division
        United States Department of Justice

        */s/ Donna D. Duer*
        Donna D. Duer, Trial Attorney
        Environmental Enforcement Section
        Environment and Natural Resources Division
        United States Department of Justice
        P.O. Box 7611, Ben Franklin Station
        Washington, DC  20044-7611
        (202) 514-3475
        Donna.duer@usdoj.gov

        GRANT C. JAQUITH
        Acting United States Attorney
        Northern District of New York

        Thomas Spina
        Assistant United States Attorney
        U.S. Attorney's Office, Northern District of New York
        100 South Clinton Street, Room 900
        Syracuse, NY  13261

OF COUNSEL:

Lauren Charney
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 2
290 Broadway, 17th Floor
New York, NY  10007-1866